# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

|                              |   |            |
|------------------------------|---|------------|
| UNITED STATES OF AMERICA     | ) |            |
|                              | ) |            |
| v.                           | ) | CR418-026  |
|                              | ) |            |
| ROBERT KIMBLE,               | ) |            |
|                              | ) |            |
|    Defendant.  | ) |            |

FILED
Scott L. Poff, Clerk
United States District Court

By jburrell at 3:00 pm, Aug 16, 2018

## REPORT AND RECOMMENDATION

Defendant Robert Kimble, indicted for armed bank robbery and weapons offenses, moves to suppress evidence seized by the police pursuant to two search warrants issued by a state judicial officer.   Doc. 50.   He contends that the affidavits for those warrants failed to establish probable cause for a search of his home or the collection of a DNA sample from his person.   The motion is meritless and should be denied.

This Court, of course, is confined to the four corners of the warrant affidavit in assessing whether there was a probable-cause basis for the issuance of the search warrants. [1]   In making that assessment, a reviewing court's task is not to make a *de novo* finding of probable cause

---

[1]   Kimble challenges only the facial validity of the two warrant affidavits (which set out identical facts) and does not contend that they contain any false or reckless misstatements that would justify an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).

but rather to determine whether the state magistrate had a "substantial basis" for his or her independent judgment regarding that question. *Illinois v. Gates*, 462 U.S. 213, 236, 238-39 (1983); *United States v. Martinez-Martinez* 2018 WL 2392722 at * 7 (S.D. Ga. Jan. 17, 2018). Indeed, the state magistrate's probable cause determination is entitled to "great deference," *Gates*, 462 U.S. at 236, and "should be sustained in doubtful or marginal cases." *United States v. Scott*, 555 F.2d 522, 527 (5th Cir. 1977); *see also Gates*, 462 U.S. at 237 n. 10.   That exceedingly deferential standard is certainly met in this case.

The warrant affidavits, attached to the Government's brief (docs. 52-1 & 52-2), relate the following facts.   On October 11, 2017, a black male wearing a dark colored hoodie, dark pants, dark gloves, sunglasses, and white shoes robbed the Navy Federal Credit Union on Abercorn Street in Savannah, Georgia.   Doc. 52-1 at 1.   The perpetrator, who carried a black semi-automatic pistol, had bank personnel place the stolen funds in a "white trash bag."   *Id.*   Hidden inside one of the cash bundles was a GPS tracking device that gave real-time location information to law enforcement officers investigating the robbery.   *Id.*

Within minutes of the robbery, information from the tracking

2

device led officers to an abandoned black Dodge Challenger that had earlier been used as the getaway vehicle. *Id.* at 2. That vehicle, officers found, had recently been stolen. *Id.* Meanwhile, other officers remained on the trail of the tracking device, which led them to two additional vehicles -- a black 2006 Pontiac Grand Prix that sped away from the approaching police cruisers, and a grey 2012 Kia Optima that officers pulled over in front of a residence located at 122 Walz Circle. *Id.* at 2, 3. While officers pursued the Pontiac, other officers identified the driver of the Kia as Robert Kimble and determined that his vehicle was registered to the 122 Walz Circle address. *Id.* at 3. The officers who stopped Kimble promptly released him, however, for at that point no additional information had surfaced linking him to the robbery.

The officers in pursuit of the Pontiac continued to chase that vehicle until it crashed into the front yard of 2145 Walz Drive. *Id.* at 2. The driver, Jerrell Roberts, fled on foot a short distance until he was captured in the back yard of Kimble's residence at 122 Walz Circle. *Id.* Inside the Pontiac officers spotted in plain view a black semi-automatic pistol and a white trash bag containing the currency taken during the robbery. *Id.*

3

Roberts, after waiving his rights, told the police that earlier that day he had received a phone call from someone he knew as "BAM," who related that he had just "done a lick" and that it was "hot." *Id.* BAM asked Roberts to meet him at a location near Jenkins High School, where he would hand over some money that he wanted Roberts to hide until things cooled down. *Id.* BAM promised to "break off" some of the proceeds in exchange for Roberts' assistance. *Id.* When Roberts arrived at the location, BAM was in the passenger seat of a black Dodge. *Id.* BAM handed Roberts a bundle consisting of a dark hoodie with some items wrapped inside it, and the two vehicles then departed in different directions. *Id.* When Roberts noticed that some police cars were tailing him, he tried to outrun them. *Id.* While in flight, Roberts opened the bundle and saw that it contained cash and a gun. *Id.* Roberts identified BAM's first name as Robert and stated that he lived at 122 Walz Circle. *Id.* When the police showed him a photograph of Robert Kimble, Roberts positively identified him as the person he called "BAM." *Id.*

A task force officer, Michael Rowan, prepared search warrant affidavits which set forth all the facts summarized above. Doc. 51-1 at

4

1-3; doc. 52-1 at 1-3.   He presented the affidavits to a Chatham County Recorder's Court judge on October 12, 2017, the day after the credit union robbery.   On the basis of those affidavits, the judge issued a search warrant for Kimble's residence at 122 Walz Circle to look for white trash bags, ammunition for a semi-automatic pistol, a key to a Dodge Challenger, and various items known to have been worn by the robber. Doc. 52-1 at 4.   A second warrant authorized a search of Kimble's person to obtain a DNA sample and to look for the Dodge Challenger key.   Doc. 52-2 at 4.

In challenging the probable cause basis for these warrants, Kimble argues that the affidavits fail to set forth any facts corroborating Jerrell Roberts' accusation that Kimble was the actual perpetrator of the robbery.   Doc. 50 at 4.   But this is simply not accurate.   Roberts' detailed account of the events matched up with other objective evidence gathered by the police before they ever spoke to Roberts, and nothing in the affidavits suggests that Roberts knew the police had acquired this evidence and then fashioned a story around those details.   The police had already determined that a black Dodge Challenger had been used as the getaway vehicle, and Roberts said later that Kimble was a passenger

in a black Dodge when he handed over the loot from the robbery.   Doc. 52-1 at 2.   The police had earlier stopped Kimble's Kia because it was spotted in the close vicinity of GPS coordinates furnished by the tracking device.   Roberts, who was then leading other officers on a high-speed chase, did not know this when he identified Kimble as the robber.[2]   The police encountered the Kia directly in front of 122 Walz Circle, and Roberts later fled on foot to that very residence.   Thus, Roberts, who was caught red-handed with robbery evidence in his vehicle, gave a detailed, plausible account of the events that tied in with evidence derived by the police through their independent investigation.

It is true that the corroborating evidence here is not especially compelling and could be explained in a way consistent with Kimble's innocence.   As the Supreme Court noted in *Illinois v. Gates*, however, the police need not uncover direct evidence of a suspect's criminality before they can credit an informant's story.   462 U.S. at 243 n. 13 (rejecting the notion that "the corroboration of innocent activity" is insufficient to support a finding of probable cause).   Indeed, because

---

[2]  Roberts, who was unaware that a tracking device was concealed in the bag filled with currency (else he would never have taken custody of it), could not have known that the police had zeroed in on Kimble's vehicle because of its proximity to coordinates furnished by that device.

probable cause requires only a "substantial chance" of criminal activity, "innocent behavior *frequently* will provide the basis for a showing of probable cause."   *Id.* (emphasis added).[3]

Probable cause is incapable of precise definition, but one thing is certain -- it does not equate to a more-likely-true-than-false standard. *Texas v. Brown,* 460 U.S. 730, 742 (1983); *United States v. Jackson*, 2017 WL 7409988, at * 3 (S.D. Ga. Oct. 17, 2017) (discussing the probable cause standard in the context of the warrantless search of an automobile). It is "'only the probability, and not a *prima facie* showing,'" of criminality that is required.   *Gates*, 462 U.S. at 235.   The magistrate "is simply to make a practical, common-sense decision" that evidence of a crime will be located at the place sought to be searched.   *Id.*   A reviewing court's task is not to second-guess the wisdom of that decision, but rather to determine whether the magistrate could reasonably (even if erroneously) have concluded that the probable cause threshold was satisfied.

Under that deferential standard, the state judge's decision in this

---

[3]   In *Gates*, an anonymous informant's tip that a married couple was transporting and selling drugs was "partially corroborated" by the police, *id.* at 217, who confirmed only certain "innocent details" of that tip.   *Id.* at 229.   Nonetheless, that corroboration sufficiently reduced the chance that the tipster (whose veracity, reliability, and basis for knowledge were entirely unknown) was simply spinning "a reckless or prevaricating tale."   *Id.* at 245.

case survives review.   Roberts' detailed account of the events gained immediate credibility because certain portions of it fit together with information already developed by the police.   True, Roberts could have been lucky or clever enough to have concocted a story that just happened to match up with facts independently known to the police.   But the police are not required to rule out every possibility that an informant is lying before crediting his information, particularly where, as here, certain important details of his story have been verified by independent police work.   Again, common-sense judgements are what are called for.   Given the totality of the information set forth in the warrant affidavit, it was certainly reasonable for the magistrate to reach the commonsensical conclusion that there was a fair chance that Kimble was involved in the robbery.   The magistrate also made the permissible inference both that evidence of that crime would be found in his residence and that Kimble's DNA would match DNA evidence lifted from the getaway vehicle or items seized from the Pontiac.

Even assuming that there was no substantial basis for the magistrate's probable-cause finding, the search warrants are nonetheless sustainable under the good faith doctrine announced in *Leon v. United*

*States*, 468 U.S. 897 (1984).   There, the Supreme Court held that the judicially-created exclusionary rule, designed as a deterrent to police misconduct, should not be employed where an officer acts in objective, good faith reliance upon a search warrant that is only later found by a reviewing court to be invalid.   *Id.* at 921-22.   "In the ordinary case an officer cannot be expected to question the magistrate's probable cause determination or his judgment that the form of the warrant is technically sufficient."   *Id.* at 921.

The good faith doctrine does not apply when it is clear that "a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."   *Leon*, 468 U.S. at 922 n. 23.   This is not such a case, however.   Here, the warrant affidavit set forth a faithful account of all the information the police had gathered in their investigation, and even if that information is ultimately found to have fallen short of the probable cause target, it certainly did not miss the mark by a wide margin.   As this Court recently observed, "the circumstances under which an officer might have good faith are not limited to situations where 'the affidavit presents enough evidence to create a disagreement among reasonable jurists as to the existence of

probable cause,'" for *Leon* imposes a "reasonable officer," not a "reasonable jurist," test. *Martinez-Martinez*, 2018 WL 2392722 at * 8 (quoting *Taxacher,* 902 F.2d at 871).   Ordinarily, therefore, an officer is entitled to rely on a judge's superior knowledge of the law in evaluating whether the objective facts set forth in the affidavit amount to probable cause.   *Id.*   Given the consistency of Jerrell Roberts' statement identifying Kimble as the robber and the evidence independently gathered by the police (which placed Kimble along the path the of the tracker and at the exact point where Roberts was captured), it cannot seriously be argued that the officers could not have harbored a good faith belief in the validity of the warrant.

The Court remains satisfied that Jerrell Roberts' statement identifying Robert Kimble as the actual bank robber was sufficiently corroborated by evidence independently gathered by the police as to furnish at least a substantial basis for the state judge's probable cause finding.   But even assuming otherwise, this is certainly not a case where the warrant affidavits were "so lacking in indicia of probable cause as to render [the officers'] belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923, *see Martinez-Martinez*, 2018 WL 2392722 at * 8

(noting that, under *Leon*, the police may have a good faith belief that a search warrant is valid "even if there was no substantial basis for the magistrate's probable cause finding"). Accordingly, the evidence seized pursuant to those warrants must be upheld despite any error made by the magistrate in her independent assessment of whether the probable cause standard was satisfied.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; see Symonett v. V.A. Leasing Corp., 648

F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x

542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this <u>16th</u> day of

August, 2018.

_____

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA